**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| TALEN ENERGY CORPORATION, *et al.* | : |  |
|  | : | Case No. 22-90339 (MI) |
|  | : |  |
|  | : | Jointly Administered |
| Reorganized Debtors.[1] | : |  |

---------------------------------------------------------------x

## TALEN GUC TRUST'S MOTION FOR ENTRY OF AN ORDER (I) IDENTIFYING SPECIFIED CLAIMS SUBJECT TO CERTAIN PLAN PROVISIONS AND RELATED DISTRIBUTION RIGHTS WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 19, 2023 AT 9:30 AM IN COURTROOM 404, FOURTH FLOOR, 515 RUSK, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

The Talen GUC Trust (the "GUC Trust"), established pursuant to the confirmed *Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* [Docket No. 1760] (the "Plan")[2] of the above-captioned reorganized debtors (collectively, the "Debtors" and, after the Effective Date of the Plan, the "Reorganized Debtors"), hereby moves (this "Motion") for entry of an order, substantially in the form attached hereto (the "Proposed Order"), identifying, on a Claim by Claim basis, that the Holders of the Non-GUC Trust Claims (defined below) identified on **Exhibits 1-3** thereto are not GUC Trust Beneficiaries with respect thereto and are not entitled to any distribution from the GUC Trust thereon, and granting related relief.  In further support of this Motion, the GUC Trust sates as follows:

## I.        Preliminary Statement[3]

1.        The Plan contemplates fifteen separate classes, several of which contain Unsecured Claims.  However, under the terms of the Plan, the GUC Trust is only focused on the reconciliation and administration of Unsecured Claims in three of the classes in the Plan—Class 5A General Unsecured Claims, Class 5B Uri Claims, and Class 6A General Unsecured Convenience Claims (the "Trust Beneficiary Classes").  Therefore, this Motion seeks to specifically (i) identify certain Unsecured Claims that are *not* within the Trust Beneficiary Classes, and (ii) with respect to the specified Uri Claims and 29 Debtor Claims, confirm the treatment of such Claims on a Claim by Claim basis under the Plan with respect to any distributions from the GUC Trust.  For the avoidance of doubt, nothing in this Motion seeks to alter, impair, or otherwise modify any rights of any Holder of a Claim except with respect to the Non-GUC Trust Claims and the GUC Trust, and such Holders' rights are expressly preserved in the Proposed Order.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[3] In this section, a capitalized term used but not defined shall have the meaning ascribed to it below.

2.     Under the terms of the Plan, the GUC Trust was established to, among other things, administer the GUC Trust Assets for the benefit of the Trust Beneficiary Classes.  *See* Plan, at Art. IV.N.1.  In this regard, Michael D. Warner, was appointed as the GUC Trustee of the GUC Trust, and under the terms of the Plan, is the exclusive administrator of the GUC Trust Assets[4] "as well as a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving the Trust Beneficiary Classes under the Plan and for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement." *See* Plan, at Art. IV.N.1. Under the Plan and the GUC Trust Agreement, the GUC Trustee is responsible for the Claims reconciliation process as to the Trust Beneficiary Classes, including reviewing, reconciling, objecting to, and settling such Claims.    *See* GUC Trust Agreement, at Art. 3.1.4 and Plan, at Arts. VII.A-VII.B.

3.     To date, there have been over 37,000 Claims filed against the Debtors, the substantial majority of which are filed in the Trust Beneficiary Classes.  Prior to the Effective Date, the Official Committee of Unsecured Creditors (the "Committee") and its professionals expended substantial time and effort beginning the review and analysis of the Claims relating to the Trust Beneficiary Classes.  Following the Effective Date, the GUC Trust and its professionals have taken up the mantle of the Trust Beneficiary Classes Claims reconciliation process from the Committee. Based on the review and efforts to date of the GUC Trustee and the professionals of the GUC Trust, the GUC Trustee believes that entry of an order establishing that certain Claims, as more fully discussed below, hold no rights to a distribution from the GUC Trust at this early stage will clarify the rights of certain Holders of Claims as it relates to the GUC Trust, thereby promoting an

---

[4] Article I.A.147 of the Plan defines GUC Trust Assets as "(i) the GUC Cash Pool; (ii) the GUC PPL Recovery Pool; (iii) the Committee Budget Excess; and (iv) the General Unsecured Convenience Claims Fund."

efficient and transparent Claims reconciliation process. Furthermore, the granting of the relief requested herein will reduce future notice and service costs by clarifying and reducing the number of parties who may be affected by actions taken by the GUC Trust in connection with the chapter 11 cases and Plan.

4.      The relief requested in this Motion is fully consistent with the terms of the Plan and relates to confirming which specific Claims fall within the ambit of existing and applicable Plan provisions. More specifically, the GUC Trust is seeking the following relief, all as more fully described below.

5.      *First,* the Plan does not provide for the substantive consolidation of the Debtors or the consolidation of the Debtors for distribution purposes. Rather, the Plan, as part of the Global Plan Settlement, provides that the Holders of Class 5A General Unsecured Claims will share in the GUC Trust Net Assets pursuant to the terms of the GUC Settlement Allocation. *See* Plan, at Art. III.B.6.b. The GUC Settlement Allocation, in turn, provides for a formula and process to allocate the GUC Trust Net Assets among the Holders of Class 5A Unsecured Claims on a Debtor by Debtor basis. However, the GUC Settlement Allocation provides that there will be no allocation of the GUC Trust Net Assets to the Holders of Class 5A General Unsecured Claims against 29 of the Debtors (collectively, the "29 Debtors") specified therein (collectively, the "29 Debtor Claims") by virtue of a 0.0 GUCs Multiplier % attributable to the 29 Debtors. *See* Docket Nos. 1571 and 1598. The GUC Settlement Allocation further clarifies that,

> For the avoidance of doubt, the Holder of an Allowed Class 5A Claim against a Debtor entity which the GUCs Multiplier % set forth in the Table below has no percentage shall not be entitled to an distribution from the GUC Trust Assets, and any filed or scheduled Claim filed against such Debtor entity shall be deemed automatically disallowed, without further action by the GUC Trustee or order of the Bankruptcy Court.

6.     Accordingly, and as more fully described below, the GUC Trustee seeks to clarify that the Holders of the 29 Debtor Claims, as identified on **Schedule 1** to the Proposed Order, are not entitled to any distribution from the GUC Trust thereon because such Claims were previously disallowed under the terms of the Plan.

7.     *Second*, the Plan provides for a qualified right to distributions from the GUC Trust for Uri Claims.  As more specifically described below and in the Plan, the Plan generally provides that the Holders of Uri Claims, or Claims on account of damage caused by Winter Storm Uri (other than non-subrogation Claims held by insurance providers), may pursue such claim to final judgment, but that the Debtors' liability with respect to the Uri Claims is limited to (i) the amount of available proceeds of any applicable Uri Insurance Policy and (ii) a Class 5A General Unsecured Claim in the amount of the self-insured retention pursuant to a Uri Insurance Policy (*i.e.* an SIR), solely to the extent the applicable Uri Insurance Policy contains an SIR.  In this regard, the Holders of Uri Claims are only entitled to a distribution from the GUC Trust to the extent of a Claim on account of an existing SIR under the Uri Insurance Policies.

8.     The GUC Trustee and the professionals of the GUC Trust have had an opportunity to review the terms of the Uri Insurance Policies, copies of which are filed under seal concurrently herewith, and have determined that none of the Uri Insurance Policies contain an SIR applicable to the Uri Claims.  Moreover, Article III.B.7.b.ii of the Plan provides that the GUC Trustee may "file such motions with the Bankruptcy Court as it deems appropriate for the administration of Claims in the amount of the applicable SIR." Accordingly, and in accordance with the terms of the Plan, the GUC Trust seeks confirmation in the Proposed Order that the Holders of Uri Claims identified in **Schedule 2** thereto are not entitled to any distribution from, or hold any rights against, the GUC Trust on account of such Uri Claims.

9.  *Third*, the Plan contemplates fifteen separate classes, several of which contain Unsecured Claims that do not fall within one of the Trust Beneficiary Classes.  Only Claims in the three Trust Beneficiary Classes are potentially entitled to distributions from the GUC Trust, and the GUC Trust may only review, reconcile, object to, and settle Claims in the Trust Beneficiary Classes to the extent set forth in the Plan.  Among the Classes containing Unsecured Claims that are not Trust Beneficiary Classes are the Class 4 Unsecured Note Claims, Class 7 Prepetition Cumulous Intercompany Claims, and Class 8 Prepetition Intercompany Claims.  The Plan also provides specific treatment with respect to the Indemnification Obligation Claims.  Additionally, the Plan also separately classifies Claims asserted against TEC, the subsequently filed Debtor, *via* the Class 12 TEC Creditor Claims.  Given the nuanced provisions of the Plan, the GUC Trust believes that it is appropriate to seek confirmation that certain Claims are not among the Claims in a Trust Beneficiary Class with rights against the GUC Trust. As a result, the GUC Trust seeks confirmation that the Holders of Claims identified in **Exibit 3** to the Proposed Order (collectively, the "Non-Trust Beneficiary Claims") hold no rights against the GUC Trust, including any rights to a distribution from the GUC Trust, on account of such Claims.

10.  The GUC Trustee and its professionals have conducted substantial diligence and investigation into the 29 Debtor Claims, the Uri Claims, and the Non-Trust Beneficiary Claims (collectively, the "Non-GUC Trust Claims"), reviewing such Claims to make the determination that each Claim is not entitled to a distribution from the GUC Trust.  Accordingly, the GUC Trustee respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto, establishing that the Holders of the Non-GUC Trust Claims are not entitled to a distribution from the GUC Trust on account of such Claims.

11.     In support of the relief requested in this Motion, the GUC Trustee submits the *Declaration of Michael D. Warner in Support of Talen GUC Trust's Motion for Entry of an Order (I) Identifying Specified Claims Subject to Certain Plan Provisions and Related Distribution Rights with Respect Thereto, and (II) Granting Related Relief*, attached hereto as **Exhibit A** (the "Declaration").

## II.     Jurisdiction and Venue

12.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The predicates for the relief requested herein are sections 105(a) and 1141 of Title 11 of the United States Code (the "Bankruptcy Code"); Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## III.     Background

### A.     General Background

14.     On May 9, 2022 (the "Petition Date"), Talen Energy Supply, LLC ("TES") and certain of its affiliates filed with this Bankruptcy Court voluntary cases under chapter 11 of the Bankruptcy Code.  On December 12, 2022, related entity Talen Energy Corporation ("TEC"), commenced a voluntary case in this Court under chapter 11 of the Bankruptcy Code.  The Debtors operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15.     The Debtors' chapter 11 cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

16.     On May 10, 2022, the Bankruptcy Court entered its *Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* [Docket No. 59], pursuant to which, among other things, Kroll Restructuring Administration LLC currently serves as the Debtors' claims and noticing agent (the "Claims Agent") and is required to maintain the official Claims Register in the Debtors' chapter 11 cases (the "Claims Register").

17.     On June 25, 2022, the Debtors filed their Statements of Financial Affairs and their Schedules of Assets and Liabilities [Docket Nos. 635-778]; on November 15, 2022, Debtor, Talen Montana, LLC, filed its Amended Schedule of Assets and Liabilities [Docket No. 1477]; and on December 12, 2022, Debtor, TEC, filed its Statements of Financial Affairs [Docket No. 5] and Schedules of Assets and Liabilities [Docket No. 6] in Case No. 22-90339 (all Debtors' Schedules of Assets and Liabilities are collectively referred to as the "Schedules").

18.     On May 18, 2022, the Court entered the *Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix and a Consolidated List of 30 Largest Unsecured Creditors and (B) Redact Certain Personal Identification Information and (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information* [Docket No. 237], which established, among other things, August 1, 2022 at 5:00 p.m. (prevailing Central Time) as the general Claims bar date.

19.     On June 28, 2022, the Court entered its *Order (I) Establishing Procedures for Filing Proofs of Claim and (II) Granting Related Relief* [Docket No. 792], establishing procedures for filing proofs of claim.

20.     On December 15, 2022, the Court entered the *Order Directing (I) Joint Administration of Additional Chapter 11 Case and (II) that Certain Orders in Chapter 11 Cases of Talen Energy Supply LLC et al. be Made Applicable to Additional Debtor* [Docket No. 1736], pursuant to which the Bankruptcy Court established March 2, 2023, at 5:00 p.m. (prevailing Central Time) as the deadline for non-governmental units to file proofs of claim against TEC.

21.     On December 14, 2022, the Debtors filed the Plan and on December 20, 2022, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* [Docket No. 1760] (the "Confirmation Order"), confirming the Plan.  On May 17, 2023, the effective date of the Plan occurred (the "Effective Date"). *See* Docket No. 2060.

22.     Article IV.N of the Plan provides that the GUC Trust would be established pursuant to a GUC Trust Agreement and the GUC Trustee, among other things, is the exclusive administrator of the GUC Trust Assets "as well as a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving [the Trust Beneficiary Classes] under the Plan and for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement." Plan, at Art. IV.N.1.

23.     On May 17, 2023, the GUC Trust filed a copy of the execution version of that certain *GUC Trust Agreement*, dated as of May 17, 2023, appointing Michael D. Warner as GUC Trustee [Docket No. 2063] ("GUC Trust Agreement").

24.     Under the GUC Trust Agreement, "the GUC Trust is established for the benefit of the Holders of Allowed Class 5A General Unsecured Claims and Holders of Allowed Class 6 General Unsecured Convenience Claims (each such claimholder, a "GUC Trust Beneficiary" and collectively, "GUC Trust Beneficiaries") for the purpose of (i) collecting, holding, administering,

distributing and liquidating the GUC Trust Assets for the benefit of the GUC Trust Beneficiaries in accordance with the terms of this GUC Trust Agreement, the Plan, and the Confirmation Order and (ii) making distributions to the GUC Trust Beneficiaries, in each case to the extent required by and permitted under the Plan." GUC Trust Agreement, p. 1.

25. On July 28, 2023, the Court entered its *Final Decree Closing Certain Cases* [Docket No. 2162], which, *inter alia*, closed certain of the chapter 11 cases, directed that filings related to the chapter 11 cases should be made in Case No. 22-90339 (MI) (the "Remaining Case"), and providing that "the [GUC Trust] may undertake all actions and discharge all duties in accordance with the Plan and Confirmation Order in the Remaining Case to the same extent it could have undertaken or performed such actions or duties in the Closed Cases, notwithstanding entry of this Order."

B.    **The 29 Debtor Claims**

26. Because the Plan is not substantively consolidated and recovery for each creditor is allocated to each Debtor separately, Article III.B.6.b of the Plan provides that Class 5A General Unsecured Claims are to be paid a share of the GUC Trust Net Assets with such share to be determined based on the GUC Settlement Allocation.[5]

27. The GUC Settlement Allocation is an allocation formula attached as Exhibit F to the *Supplement to Disclosure Statement for Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* filed on November 28, 2022 [Docket No. 1571], which was again filed as Exhibit I-3 to the *Notice of Filing of Plan Supplement in Connection with Joint Chapter 11 Plan*

---

[5] Article I.A.149 of the Plan defines GUC Trust Net Assets as "the GUC Trust Assets less: (i) the GUC Trust Expenses; and (ii) the General Unsecured Convenience Claims Fund."

*of Talen Energy Supply, LLC and its Affiliated Debtors* filed on November 29, 2022 [Docket No. 1598] (the "GUC Settlement Allocation").

28.     The GUC Settlement Allocation contains a table that lists for each Debtor a "GUCs Multiplier %" amount, which is to be used by the GUC Trust to calculate the distributions to the Holders of Allowed Class 5A Claims according to which Debtor a particular claim relates to.

29.     The 29 Debtors listed on the GUC Settlement Allocation table do not have any corresponding GUCs Multiplier % listed for them.  The GUC Settlement Allocation expressly states that Holders of Allowed Class 5A Claims against a Debtor entity with no GUCs Multiplier % is not entitled to any distribution from the GUC Trust Net Assets and that any Claims filed against, or scheduled by, such Debtor entity "shall be deemed automatically disallowed, without further action by the GUC Trustee or order of the Bankruptcy Court." GUC Settlement Allocation, p.1-2.  However, notwithstanding that the terms of the GUC Settlement Allocation, as incorporated into the Plan, disallows the 29 Debtor Claims, the exact Claims subject thereto were not specifically identified. The specific identification of the 29 Debtor Claims will provide certainty to the Holders of Claims, the GUC Trust, and the Claim Agent regarding the exact claims subject to these Plan provisions.

30.     The GUC Trustee and its professionals have performed an analysis and reviewed the Claims Register and the Debtors' Schedules for each Debtor that is listed in the GUC Settlement Allocation with no corresponding GUCs Multiplier % associated with it and have listed those Claims in **Exhibit 1** attached to the Proposed Order.  Those Claims, identified herein as the 29 Debtor Claims, are all Claims against Debtors for which there is no GUCs Multiplier %. Accordingly, none of the Holders of the 29 Debtor Claims, which have been disallowed under the terms of the Plan, are entitled to any distribution thereon from the GUC Trust thereon or are GUC

Trust Beneficiaries with respect thereto.  Nothing herein or in the Proposed Order, however, is intended to modify or otherwise affect any Unsecured Claims Held by the Holders of the 29 Debtor Claims, except as expressly provided for herein.

      **C.**     **The Uri Claims**

     31.    Uri Claims are defined in Article I.A.323 of the Plan as Claims for damage caused by Winter Storm Uri[6] and are classified as Class 5B Claims and treated in accordance with Article III.B.7 of the Plan.  Article III.B.7.b.i provides that Class 5B Uri Claims may pursue any Claims against insurance providers and shall be satisfied solely from proceeds of any applicable Uri Insurance Policy, except to the extent of any SIR. [7]  Article III.B.7.ii, in turn provides that, "to the extent that any applicable Uri Insurance Policy contains a SIR,[8] such SIR on an Allowed Uri Claim shall be paid, satisfied, settled and discharged by the allowance of a Class 5A General Unsecured Claim in the amount of the applicable SIR."  *See also* Plan, at Art. VI.E.3 (same).  The Class 5A Claims in the amount of the applicable SIR of a Uri Insurance Policy are deemed "Uri Other Claims" under the terms of the Plan.  *See* Plan, at Art. I.A.326.

     32.    Uri Claims are not entitled to payment as a Class 5A General Unsecured Claim unless they are included in the definition of "Uri Other Claims."  However, the GUC Trust and its professionals have performed an analysis and review of the Uri Insurance Policies and believe none of the policies contain a SIR, and, therefore, no Uri Other Claims exist.  Because no Uri

---

[6] Article I.A.328 of the Plan defines Winter Storm Uri as "the major winter and ice storm that had widespread impacts across the United States, including Texas, in the period beginning 12:00 a.m. (Central Time), February 12, 2021, and ending at 11:59 p.m. (Central Time), February 20, 2021."

[7] Article I.A.324 of the Plan defines Uri Insurance Policy as "any insurance policies issued or providing coverage to one or more Debtors pursuant to which one or more Debtors asserts that coverage is/was provided for, *inter alia*, defense of and damages, if any, that are alleged to be caused by Winter Storm Uri, including all Uri Claims."

[8] Article I.A.289 of the Plan defines a SIR as "any self-insured retention pursuant to a Uri Insurance Policy."

Other Claims exist, the Holders of Uri Claims hold no right to distribution from the GUC Trust, but are, instead, entitled to pursue recoveries on account of their Ur Claims solely from the proceeds available from a Uri Insurance Policy in accordance with Article III.B.7.i of the Plan.

33.     The GUC Trust and its professionals have analyzed the Claims Register and the Debtors' Schedules and have determined that the Claims listed in **Exhibit 2** attached to the Proposed Order are all Uri Claims.  **Exhibit 2** lists all of the Uri Claims in alphabetical order, specifying detailed information including the claimants, claim numbers, and claim amounts, if any. Accordingly, the Holders of these Uri Claims are not entitled to a distribution from the GUC Trust with respect to the Uri Claims and are not GUC Trust Beneficiaries with respect thereto.  Nothing herein or in the Proposed Order is intended to affect any rights the Holders of the Uri Claims may hold under Article III.B.7.i of the Plan or under the Uri Insurance Policies.

**D.     The Other Non-Trust Beneficiary Claims**

34.     As stated above, the Plan and GUC Trust Agreement establishes the GUC Trust for the benefit of the Holders of Allowed Unsecured Claims in the three Trust Beneficiary Classes and the GUC Trust is only responsible for the Claims reconciliation and distribution processes for the Trust Beneficiary Classes, subject to the terms of the Plan.  However, the Plan also separately classifies and otherwise treats differently other Claims (*i.e.* the Non-Trust Beneficiary Claims) that do not fall within the scope of the Trust Beneficiary Classes.

35.     More particularly, Article I.A.136 of the Plan defines General Unsecured Claims, which are the Claims in Class 5A of the Plan, as:

> [A]ny Unsecured Claim, other than (i) Administrative Claims; (ii) DIP Claims; (iii) Professional Fee Claims; (iv) Priority Tax Claims; (v) Other Priority Claims; (vi) Section 510(b) Claims; (vii) Intercompany Claims; (viii) Postpetition Other Hedge Claims; (ix) Postpetition Hedge Claims; (x) Unsecured Notes Claims; (xi) General Unsecured Convenience Claims; (xii) Cumulus Intercompany Claims; (xiii) Uri Claims; (xiv) TEC Creditor Claims; or (xv) any other Claim or Interest that is

separately classified under the Plan in any other Class other than Class 5A. For the avoidance of doubt, General Unsecured Claims do not include any Interests of the Debtors or Claims for Indemnification Obligations.

36.     Article I.A.137 of the Plan defines General Unsecured Convenience Class Claims, which are Claims in Class 6 of the Plan, as "an Unsecured Claim that (x) is Allowed in the amount of $2,000 or less and (y) would otherwise be considered a General Unsecured Claim (without giving effect to clause (xi) of that term); provided, however, that any General Unsecured Claim that was originally Allowed in excess of $2,000 may not be subdivided into multiple General Unsecured Claims of $2,000 or less for purposes of receiving treatment as a General Unsecured Convenience Claim."

37.     The GUC Trust was established to administer the GUC Trust Assets only for the benefit of Allowed Class 5A General Unsecured Claims and Allowed Class 6 General Unsecured Convenience Class Claims.  *See* Plan, at Art. IV.N.1. Accordingly and as discussed above with respect to the Uri Claims, Claims in Classes other than Class 5A General Unsecured Claims and Class 6 General Unsecured Convenience Class Claims hold no rights to distribution from the GUC Trust on account of such Claim.[9]  Notwithstanding the foregoing, the Holders of certain other Claims may be looking to the GUC Trust for recovery on account of an Unsecured Claim that is separately classified or treated under the Plan in something other than the Trust Beneficiary Classes, including:

 (i) *Intercompany Claims* – classified and treated as Class 8 (Prepetition Intercompany Claims), pursuant to Article III.B.10 of the Plan.

---

[9] *See* Section III.C, *supra* (discussing treatment of Class 5B Claims).

(ii) *Unsecured Notes Claims*[10] – classified and treated as Class 4 (Unsecured Notes Claims), pursuant to Article III.B.5 of the Plan.

(iii) *Cumulus Intercompany Claims* – classified and treated as Class 7 (Prepetition Cumulus Intercompany Claims), pursuant to Article III.B.9 of the Plan.

(iv) *TEC Creditor Claims* – classified and treated as Class 12 (TEC Creditor Claims), pursuant to Article III.B.14 of the Plan.

(v) *Claims for Indemnification Obligations* – entitled to treatment under Article V.E of the Plan.

38.     The GUC Trustee and its professionals have analyzed the Claims Register and the Debtors' Schedules and records and have determined that the Non-Trust Beneficiary Claims identified in **Exhibit 3** to the Proposed Order are all Claims that were filed against, or scheduled by, the Debtors that do not fall within one of the Trust Beneficiary Classes, but are addressed differently under the terms of the Plan, as set forth above.[11]  **Exhibit 3** lists all of these Non-Trust Beneficiary Claims in alphabetical order, specifying detailed information including the claimants, Claim numbers, claim amounts, if any, and the corresponding Plan classification or Plan section relevant to why these Claims are not among the Trust Beneficiary Classes.

39.     Because the Non-Trust Beneficiary Claims are treated differently under the Plan and do not fall within one of the Trust Beneficiary Classes, the Holders of these Non-Trust

---

[10] Article I.A.316 of the Plan defined Unsecured Notes as "collectively, the 2022 Unsecured Notes, the 2024 Unsecured Notes, the 2025 Unsecured Notes, the 2026 Unsecured Notes, the 2027 Unsecured Notes, the 2036 Unsecured Notes, and the Series A PEDFA Bonds."

[11] Although Exhibit 3 to the Proposed Order provide a description of the GUC Trust's view regarding the likely classification or treatment of the applicable Non-Trust Beneficiary Claim, such statements are intended for illustration purposes only.  Nothing herein or in the Proposed Order is intended to definitively determine the treatment of such Claims, only that such Claims do not fall within one of the Trust Beneficiary Classes and/or are not entitled to a distribution from the GUC Trust.

Beneficiary Claims are not entitled to a distribution from the GUC Trust with respect thereto and are not GUC Trust Beneficiaries on account of such Claims. Nothing herein or in the Proposed Order is intended to alter or modify the rights or treatment of the Holders of the Non-Trust Beneficiary Claims except with respect to the limited relief requested as to the GUC Trust.

## IV.     Basis for Relief

40.     As described above, as of the Effective Date, the GUC Trustee is responsible for, among other things, overseeing the reconciliation, objection, settlement or other disposition of General Unsecured Claims asserted in these chapter 11 cases and is also responsible for the distribution of GUC Trust Assets to GUC Trust Beneficiaries in accordance with the Plan's distribution scheme. The GUC Trust seeks entry of the Proposed Order granting this Motion in order to clarify, on a Claim by Claim basis, the rights (or lack thereof) of the Holders of certain Claims against the GUC Trust, as well as to reduce the administrative burden and attendant costs, including noticing costs, borne by the GUC Trust related to the Non-GUC Trust Claims.

41.     As of the filing of this Motion, over 37,000 Claims have been filed in the Debtors' chapter 11 cases; however, for the reasons outlined above, the Plan provides that a substantial amount of these Claims are Non-GUC Trust Claims and the Holders thereof are not GUC Trust Beneficiaries.

42.     Article VII.B of the Plan provides, in part, that:

Notwithstanding anything to the contrary in the Plan or any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the GUC Trustee on behalf of the GUC Trust shall have the sole authority to File and prosecute objections to, except for the Excluded Litigation Matters, Class 5A General Unsecured Claims, Class 5B Uri Other Claims, and Class 6 General Unsecured Convenience Claims, and the GUC Trust shall have the sole authority to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all such Claims (including on the basis that any such Claim is subject to subordination or should be reclassified as another Class of Unsecured Claims); (2) settle, compromise, or resolve any Disputed Claim that would be a

16

Class 5A General Unsecured Claim, Class 5B Uri Other Claim, or Class 6 General Unsecured Convenience Claim, without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

43.     Furthermore, Article 3.5 of the GUC Trust Agreement provides:

Except as provided in the Plan or Confirmation Order or otherwise specified in this GUC Trust Agreement, the GUC Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  Except as otherwise provided herein, the GUC Trustee shall exercise his business judgment for the benefit of the GUC Trust Beneficiaries in order to maximize the value of the GUC Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, **the GUC Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the GUC Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the GUC Trust with respect to any of the GUC Trust Assets, this GUC Trust Agreement, or the Plan, including the administration or distribution of any of the GUC Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the GUC Trust**.

GUC Trust Agreement, at Art. 3.5 (emphasis supplied); *see also* GUC Trust Agreement Art. 3.1 (detailing rights, powers, and privileges of the GUC Trustee).

44.     Moreover, Article III.B.7.ii of the Plan provides that, with respect to the Uri Claims, the GUC Trustee may "file such motions with the Bankruptcy Court as it deems appropriate for the administration of Claims in the amount of the applicable SIR."

45.     Section 1141(a) of the Bankruptcy Code provides that the provisions of a confirmed plan bind any creditor regardless of whether the claim is impaired under the plan and whether the creditor accepted the plan.  Additionally, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable power to fashion any order or decree that

is in the interest of preserving or protecting the value of a debtor's assets, as long as the powers conferred under section 105 of the Bankruptcy Code are "exercised in a manner that is consistent with the Bankruptcy Code." *Stern v. Stern (In re Stern)*, 204 F.3d 1117, 1117 (5th Cir. 1999) (quoting *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1334 (5th Cir. 1993)).

46.     Granting the relief sought by the GUC Trustee falls well within these provisions of the Bankruptcy Code, Plan, and GUC Trust Agreement, and such relief would merely aid in the implementation of the confirmed Plan.  Further, such relief will in no way impair the due process rights of affected claimants because those claimants' rights have already been established by the Plan and Confirmation Order in this case.  Rather, the relief requested in this Motion enhances the transparency of the Plan by clarifying the rights, on a Claim by Claim basis, of the relief already granted in the Plan.  Moreover, granting the relief requested will further aid in the efficient administration of the GUC Trust by reducing confusion regarding the treatment of the Claims identified as Non-GUC Trust Claims and by reducing noticing costs to the Holders thereof.

47.     As detailed above, the GUC Trustee and its professionals have gone to great lengths to evaluate and conduct diligence with respect to the Non-GUC Trust Claims. It is just this sort of relief which is contemplated in, and supported by, the Bankruptcy Code, Plan, GUC Trust Agreement, and Confirmation Order by balancing the due process rights of creditors with the efficient administration of large chapter 11 cases. Absent granting the relief requested in this Motion, the GUC Trustee may be forced to incur substantial and unnecessary costs in not only otherwise addressing the Non-GUC Trust Claims, but also providing notice of matters to the Holders thereof, incurring administrative costs that will deplete the GUC Trust Assets available

for distribution and sewing confusion regarding relief inapplicable to the Non-GUC Trust Claims, all without any commensurate benefit to any party.

48.     Therefore, the GUC Trustee respectfully requests entry of the Proposed Order, substantially in the form attached hereto, establishing that the Holders of the Non-GUC Trust Claims are not GUC Trust Beneficiaries and are not entitled to a distribution from the GUC Trust on account thereof.

**V.     Reservation of Rights**

49.     The GUC Trustee expressly reserves the right to amend, modify, or supplement the Motion and the **Exhibits 1-3** attached to the Proposed Order and to later file objections or file motions seeking relief with respect to any Claims affected by this Motion or any other Claims asserted against the Debtors' estates.

**VI.     Notice**

50.     Notice of this Objection has been given to: (a) the claimants listed in **Exhibits 1-3** attached to the Proposed Order and/or their counsel of record, if any; (b) the U.S. Trustee; (c) the Reorganized Debtors through their counsel of record; and (d) on those parties registered to receive electronic notification via the Court's CM/ECF noticing system.  The GUC Trustee respectfully submits that such notice is sufficient and proper under the circumstances and that no other or further notice is required.

**VII.     Conclusion**

**WHEREFORE**, based upon the foregoing, the GUC Trustee respectfully requests that the Court: (a) grant this Motion; (b) enter the Proposed Order clarifying that the Holders of the Non-GUC Trust Claims listed in **Exhibits 1-3** attached to the Proposed Order are not GUC Trust Beneficiaries on account of such Claims and will receive no distribution from the GUC Trust with

19

respect thereto; and (c) grant such other and further relief as may be just and proper under the circumstances.

Dated:    September 13, 2023.

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

By: /s/ Benjamin L. Wallen
Benjamin L. Wallen (TX Bar No. 24102623)
Ayala A. Hassell (TX Bar No. 01009800)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: 713-691-9385
Facsimile: 713-691-9407
Email:
bwallen@pszjlaw.com
ahassell@pszjlaw.com

  - and -

Judith Elkin (TX Bar No. 06522200)
780 Third Avenue; 34th Floor
New York, NY 10017
Telephone: 212-561-9385
Facsimile: 212-561-7777
Email: jelkin@pszjlaw.com

*Counsel to the Talen GUC Trust*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------------x
:
In re                                           :        Chapter 11
:
TALEN ENERGY CORPORATION, *et al.*              :
:        Case No. 22-90339 (MI)
:
:        Jointly Administered
:
                    Reorganized Debtors.[1]     :
---------------------------------------------------------------x

**DECLARATION OF MICHAEL D. WARNER, GUC TRUSTEE, IN SUPPORT OF TALEN GUC TRUST'S MOTION FOR ENTRY OF AN ORDER (I) IDENTIFYING SPECIFIED CLAIMS SUBJECT TO CERTAIN PLAN PROVISIONS AND RELATED DISTRIBUTION RIGHTS WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Michael D. Warner, solely in my capacity as GUC Trustee (the "GUC Trustee") of the Talen GUC Trust (the "GUC Trust") established pursuant to the confirmed *Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* [Docket No. 1760] (the "Plan") of the above-captioned debtors (collectively, the "Debtors"), hereby declare as follows:[2]

1.      I am an attorney at Pachulski, Stang, Ziehl & Jones LLP ("PSZJ"). Inclusive of my time at PSZJ, I have over 39 years of experience in corporate restructuring, including advising creditors and debtors on strategic planning, financial projections, claim reconciliation, claim resolution and debt restructuring. In connection with chapter 11 restructurings, I possess

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

considerable familiarity with and experience in, among other things, analyzing and monitoring cash management systems, debt classification and priority, bankruptcy taxation, preference actions, fraudulent conveyance actions, feasibility issues, disclosure statement and plan of reorganization approval procedures and hearings, negotiations between debtors and their creditors, and the resolution of Claims asserted against debtors.

2.      I am submitting this declaration (the "Declaration") in support of the *Talen GUC Trust's Motion for Entry of an Order (I) Identifying Specified Claims Subject to Certain Plan Provisions and Related Distribution Rights with Respect Thereto, and (II) Granting Related Relief* (the "Motion").[3]

3.      The facts set forth in this Declaration are based upon my personal knowledge, the Claims Register in the Debtors' cases, or upon records kept in the ordinary course of the Debtors' business that were, as appropriate, reviewed by me or others under my supervision and direction. Further, I or others under my supervision and direction have reviewed and analyzed, to the extent possible, the Claims listed in **Exhibits 1-3** to the Proposed Order filed with the Motion (collectively, the "Non-GUC Trust Claims").  If called and sworn as a witness, I could and would testify competently to the matters set forth herein.

4.      The GUC Trustee's professionals and I, in coordination with the Reorganized Debtors, are in the process of reviewing all Claims filed against each of the Debtors in these chapter 11 cases that fall within the purview of the GUC Trust pursuant to the Plan, as confirmed.

5.      The Plan contemplates fifteen separate classes, several of which contain Unsecured Claims.  However, under the terms of the Plan, the GUC Trust is only focused on the reconciliation and administration of Unsecured Claims in three Trust Beneficiary Classes.  To date, there have

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

been over 37,000 Claims filed against the Debtors, the substantial majority of which are filed in the Trust Beneficiary Classes. Prior to the Effective Date, the Committee and its professionals expended substantial time and effort beginning the review and analysis of the Claims relating the Trust Beneficiary Classes. Following the Effective Date, I and the professionals of the GUC Trust have taken up the mantle of the Trust Beneficiary Classes Claims reconciliation process from the Committee. Based on my review and efforts to date of and that of the professionals of the GUC Trust, I believe that entry of an order establishing that certain Claims, as more fully discussed in the Motion, hold no rights to a distribution from the GUC Trust at this early stage will clarify the rights of certain Holders of Claims as it relates to the GUC Trust, thereby promoting an efficient and transparent Claims reconciliation process. Furthermore, the granting of the relief requested in the Motion will reduce future notice and service costs by clarifying and reducing the number of parties who may be affected by actions taken by the GUC Trust in connection with the chapter 11 cases and Plan. Moreover, I believe that the relief requested in the Motion is fully consistent with the terms of the Plan and relates to confirming which specific Claims fall within the ambit of existing and applicable Plan provisions.

6.     I and the professionals of the GUC Trust have conducted substantial diligence and investigation into the Non-GUC Trust Claims, reviewing such Claims to make the determination that these Claims are not entitled to a distribution from the GUC Trust. With respect to the Uri Claims, I and the GUC Trust's professionals have reviewed the Uri Insurance Policies, which have been filed concurrently with the Motion. Based on this review, I do not believe that any of the Uri Insurance Policies include an applicable SIR. As a result, I believe that the Uri Claims are treated under the Plan solely as Class 5B Uri Claims, and that none of the Uri Claims, or any portion thereof, are entitled to be treated as Class 5A General Unsecured Claims with respect to any SIR

3

(because no applicable SIR exists under the Uri Insurance Policies).  Similarly, I believe the Claims identified in the Motion as the 29 Debtor Claims were disallowed under the terms of the Plan as set forth in the Motion.  Finally, I believe the Claims identified as Non-Trust Beneficiary Claims in the Motion are not properly classified within the three Trust Beneficiary Classes.  As a result, the Holders of the Trust Beneficiary Claims are not entitled to any distribution from the GUC Trust on account of any Non-Trust Beneficiary Claims, and hold no rights against the GUC Trust with respect thereto.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 13, 2023                              */s/ Michael D. Warner*
                                                        Michael D. Warner